## A09A0122. BENITEZ v. THE STATE.
(673 SE2d 46)

ANDREWS, Presiding Judge.

On appeal from his conviction for trafficking in methamphetamine, Juan Benitez argues that the evidence was insufficient. We agree and reverse.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that a confidential informant working with Bartow County police contacted Jose Garduno, who agreed to deliver two pounds of methamphetamine to a room at the Ramada Inn in Cartersville. Officer Mark Mayton left the informant in the room and set up surveillance in an adjoining room; other officers, none of whom appeared at trial, apparently surveilled the exterior. The confidential informant predicted that Garduno and two other people, not including Benitez, would make the buy.

According to Benitez, who testified in his own defense, Garduno came to the Marietta auto repair shop where Benitez worked and asked him for a ride to "see some girls" at the hotel. Garduno's truck had overheated, and he had previously brought at least five other cars to the shop for repairs. Benitez's friend Antonio started working on Garduno's truck, and Benitez agreed to drive Garduno. When Garduno told Benitez that he was going to take some food to the hotel, Benitez pointed out that Garduno did not have anything with him. Garduno responded that others would meet them with food at the hotel.

The two men arrived at the hotel at about 4:00 p.m. Officer Mayton testified that the officers surveilling the exterior saw two cars pull up outside the room with three men and one woman inside them. Benitez objected to this testimony as hearsay, however, and the

trial court sustained the objection. When Benitez and Garduno arrived, Garduno went upstairs and returned carrying a white plastic bag. Benitez asked what was in the bag, and Garduno replied that it was food. The two men entered the informant's room, and Benitez sat nearby for up to ten minutes while Garduno placed three plastic food containers on the bed, showed their contents to the informant, and spoke in English, which Benitez did not understand. Benitez could see the contents of the containers from where he was sitting. Soon afterward, police entered the room through the connecting door and arrested both Garduno and Benitez. At the time police entered the room, the containers were closed.

A search incident to arrest found that Benitez was carrying $2,485 and Garduno $4,680 in cash. Benitez's job as a mechanic paid him $400 a week, and he testified that he forgot to leave the money found on him at home. The contents of the food containers weighed 453 grams, tested positive for methamphetamine, and had a street value of $40,000.

Benitez was charged as a party to the crime of trafficking in methamphetamine. Officer Mayton testified that in his experience, which included more than 100 drug cases in the previous year, no person would be present in a small room with the amount of drugs found here unless they were "intricately involved" in a drug transaction. He also testified that Latinos often carry large amounts of cash because they do not use banks. After deliberations including further instruction on the law of constructive possession, the jury found Benitez guilty of one count of trafficking in methamphetamine and sentenced him to 25 years to serve and a $1 million fine. His motion for new trial was denied.

1. OCGA § 16-13-31 (e) provides in relevant part that "[a]ny person who knowingly sells, delivers, or brings into this state or has possession of 28 grams or more of methamphetamine . . . commits the felony offense of trafficking in methamphetamine."

Benitez was never seen in actual possession of the methamphetamine here, and could be found a party to the crime of trafficking only if he aided or abetted Garduno "so as to be in constructive possession" of the drug. *Crenshaw v. State*, 183 Ga. App. 527, 528 (1) (359 SE2d 419) (1987). Mere presence at the scene of a crime is not sufficient to show that a defendant is a party to the crime; "[e]ven approval of the act, not amounting to encouragement, will not suffice." Id. A conviction on circumstantial evidence requires not only that the proved facts be consistent with the hypothesis of guilt, but that those facts exclude "every other reasonable hypothesis save that of the guilt of the accused." (Punctuation omitted.) *Moore v. State*, 255 Ga. 519, 520 (1) (340 SE2d 888) (1986). Even if a rational jury could conclude that Benitez knew that Garduno was carrying

methamphetamine, this fact alone "would not authorize a finding that [Benitez] aided and abetted him in the offense of trafficking." *Crenshaw*, 183 Ga. App. at 528 (1); see also *Stringer v. State*, 275 Ga. App. 519, 521 (621 SE2d 761) (2005).

"[W]e recognize that the equal access rule does not apply to eliminate the presumption of possession where all persons allegedly having equal access to the contraband are alleged to have been in joint constructive possession of that contraband." (Punctuation omitted.) *Turner v. State*, 276 Ga. App. 381, 383 (623 SE2d 216) (2005). Where the State does not charge the other person alleged to be in joint possession, however, "the State bears the burden of showing that the defendant was in *sole* constructive possession of the drugs." (Punctuation omitted; emphasis in original.) Id. Here, the State referred to Garduno as a co-defendant at Benitez's sentencing, but did not show the jury that Garduno was charged as such.

Finally, when the State's case depends entirely on circumstantial evidence, as here, it cannot carry its burden of proof merely by pointing out inconsistencies in Benitez's testimony (such as his leaving work for five hours and forgetting to leave a large amount of cash at home). As we held a hundred years ago:

> Ordinarily the jury, in considering an admission which is partly inculpatory and partly exculpatory, may believe it in part and disbelieve it in part; and this rule . . . is especially applicable to the statement the defendant is allowed to make in his own behalf at the trial. However, where the State must rely upon the defendant's admission alone for essential elements of its case, this rule does not apply to the extent that a verbal segregation of what the defendant said is to be permitted. "If the main fact is admitted with a qualifying exclusion of a necessary ingredient of the crime charged, the crime is not confessed. The qualification is a part of the admission, and both must be considered in interpreting the meaning of the statement. It would be manifestly unfair to hold a person criminally bound by a statement which admits the commission of an act and in the same breath legally justifies or excuses the same." *Owens* v. *State*, 120 Ga. 297, 299 (48 SE 21) [(1904)].

*Wall v. State*, 5 Ga. App. 305, 308 (63 SE 27) (1908).

No evidence showed that Benitez was in actual possession of the methamphetamine. His mere knowledge of Garduno's possession was not enough to make Benitez a party to the crime, and others at the time of his arrest had at least equal access to the drug. His own account "may seem unreasonable, but it is the only explanation the

State has been able to offer with anything like legal certainty." *Wall*, 5 Ga. App. at 308. It follows that the evidence was insufficient to sustain Benitez's conviction. See *Turner*, 276 Ga. App. at 383-384 (acquittal required where sole evidence of possession is constructive and others have equal access to the contraband); *Stringer*, 275 Ga. App. at 521-522 (evidence including defendant's booking of hotel room and presence in room was insufficient to sustain conviction for possession of cocaine); *Paden v. State*, 216 Ga. App. 188, 189-190 (1) (453 SE2d 788) (1995) (evidence of defendant's presence at premises where drugs were found was insufficient to sustain conviction for possession of cocaine); *Crenshaw*, 183 Ga. App. at 528-529 (1) (defendant's traveling on same flight itinerary with person carrying cocaine was insufficient to sustain his conviction for trafficking); *Wall*, 5 Ga. App. at 308 (reversing conviction for voluntary manslaughter).

2. Benitez's remaining assertions of error are moot.

*Judgment reversed. Miller, C. J., and Barnes, J., concur.*

DECIDED JANUARY 23, 2009.

*David W. Brookshire*, for appellant.

*T. Joseph Campbell, District Attorney, Richard A. Hull, Assistant District Attorney*, for appellee.